**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| 1600 EAST NEWLANDS DRIVE, LLC, | ) )  ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| AMAZON.COM.NVDC, LLC, et al., | ) ) ) |
| Defendants. | ) ) ) |

3:17-cv-00566-RCJ-WGC

**ORDER**

Presently before this Court are eight pending motions:

1. Plaintiff's Motion for Summary Judgment on Counterclaims (ECF No. 34);
2. Plaintiff's Motion for Summary Judgment on Claims (ECF No. 35);
3. Plaintiff's Motion to Seal (ECF No. 36);
4. Defendants' Motion to Strike (ECF No. 54);
5. Defendants' Motion for Summary Judgment on Claims (ECF No. 56);
6. Defendants' Motion to Strike (ECF No. 74);
7. Defendants' Motion for Leave to File a Sur-Reply (ECF No. 75); and,
8. Plaintiff's Motion to Seal (ECF No. 78).

///

All of these motions are fully briefed and ready for this Court's examination. After reviewing all of the briefs, hearing oral argument, and ruling on the evidentiary motions, the Court grants summary judgement in favor of the opposing parties on all causes of action except for the breach of contract claims and the breach of guarantee claim; they shall proceed to bench trial[1] or settlement.

---

1 Neither party has demanded a jury in the pleadings. *See* LR 38-1.

# I.    FACTUAL BACKGROUND

The instant action arises out of Defendants' tenancy of a property, which is a large commercial warehouse. The Defendants used the property for seventeen years as a fulfillment center. Another company, that is not a party to this lawsuit, owned the property and built the warehouse. The property sat idle for about two years until the Defendants took possession.

According to the lease between these parties, the Defendants were obligated to "keep all portions of the Property . . . in good order, condition[,] and repair . . . , subject to normal wear and tear." (Pl. App., Ex. 3-B (hereinafter "Lease") § 6.04, ECF No. 37.) Further, "[u]pon the termination of the Lease, [the Defendants] shall surrender the Property to [the Plaintiff], broom clean and in the same condition as received." (Lease § 6.06.) The lease also states, "[The Defendants] shall vacate the Property upon the expiration . . . of this Lease. [The Defendants] shall reimburse [the Plaintiff] for and indemnify [the Plaintiff] against all damages which [the Plaintiff] incurs from [the Defendants'] delay in vacating the Property." (Lease § 2.04.) The lease does not define key terms such as "vacate," "holdover," or "ordinary wear and tear," but does specify that "The laws of the state in which the Property is located shall govern this Lease," which is Nevada. (Lease § 13.09.) Also, according to the lease,

> If any portion of the Property or any system or equipment in the Property which [the Defendants are] obligated to repair cannot be fully repaired or restored, [the Defendants] shall promptly replace such portion of the Property or system or equipment in the Property, regardless of whether the benefit of such replacement extends beyond the Lease Term; but if the benefit or useful life of such replacement extends beyond the Lease Term (as such term may be extended by exercise of any options), the useful life of such replacement shall be prorated over the remaining portion of the Lease Term (as extended), and [the Defendants] shall be liable only for that portion of the cost which is applicable to the Lease Term (as extended) <u>and shall receive a refund from [the Plaintiff] for any portion after the Lease Term</u>. [The Defendants] shall maintain a preventative maintenance contract providing for the regular inspection and maintenance of the heating and air conditioning system by a licensed heating and air conditioning contractor. If any part of the Property is damaged by any act or omission of [the Defendants], [the Defendants] shall pay [the Plaintiff] the cost of repairing or replacing such damaged property, whether or

not [the Plaintiff] would otherwise be obligated to pay the cost of maintaining or repairing such property. It is the intention of [the Plaintiff] and [the Defendants] that at all times [the Defendants] shall maintain the portions of the Property which [the Defendants are] obligated to maintain in an attractive, ~~first class~~ and fully operative condition subject to normal wear and tear.

(Lease § 6.04(a).) Another relevant lease provision states:

[The Defendants] shall give written notice of any failure by [the Plaintiff] to perform any of its obligations under this Lease to [the Plaintiff] . . . . [The Plaintiff] shall not be in default under this Lease unless [the Plaintiff] . . . fails to cure such non-performance within thirty (30) days after receipt of [the Defendants'] notice. However, if such non-performance reasonably requires more than thirty (30) days to cure, [the Plaintiff] shall not be in default if such cure is commenced within such thirty (30) -day period and thereafter diligently pursued to completion.

(Lease § 13.02(b).) Lastly, the lease also provides that the prevailing party in a lawsuit arising under the lease agreement is entitled to reasonable attorney's fees from the other. (Lease § 12.01.) The original parties also signed a "Guarantee of Lease," which provides, among other things, that the Defendants shall strictly perform the terms and conditions of the lease. (Pl. App. Ex. 3-C.)

Under an addendum to the lease executed by the original parties, the Defendants had the option to expand the facility. (Addendum to Lease § 6.1.) The Defendants exercised that option and an expansion was built about a year after the lease term began.

More than four years into the lease agreement and three years after the expansion, the Plaintiff purchased the premises. Thus, the Plaintiff was the landlord until the lease term expired thirteen years later.

On the expiration of the lease term, the parties agree that the Defendants were still conducting repairs on the premises via a third-party contractor and that these repairs continued for at least two months after the expiration date. Furthermore, the city did not approve the premises for occupancy until more than three months after the lease term expired.

As part of the Defendants' repairs, the Defendants allege that they replaced up to six rooftop evaporative cooling units and one rooftop exhaust unit. Currently, the Defendants have

produced a receipt for the purchase of four evaporative cooling units. Two and a half years after the repairs, the Defendants sent a letter to the Plaintiff stating that they intended to seek reimbursement for a part of the repair costs for a presently unknown sum. This was the first written communication asking for reimbursement for the alleged replacements.

During the period between the expiration of the lease and the city approval for occupancy, the Plaintiff had access to the building with a key that could get into the side door of the building.[2] While the Plaintiff had access to the building, the access was limited because the Plaintiff had to coordinate with the Defendants and their contractor in order to walkthrough and show the property while the construction work was underway. Ultimately, the Plaintiff was able to sell the building within a year of the lease term expiring.

The parties generally agree about the state of the premises at the time that the Defendants finished the repairs, but they dispute the condition of the premises as it was initially leased to the Defendants. As the property stood when the Defendants finished all of their repairs, the carpets were worn out, the walls were not painted, a number of the dock doors were missing trailer restraint systems (truck locks) and some others were damaged, the interior lighting of the building was approximately 30 foot candles (as opposed to approximately 50 foot candles as in the original building according to the Plaintiff), and the building had missing lockers. The Plaintiff further alleges that the fire system needed repairs, that eight diffusers were missing, and that the property required other miscellaneous repairs listed in a Damage Summary prepared by Mr. Alan Arndt, witness under a Federal Rule of Civil Procedure 30(b)(6).

A third-party company performed a disinterested inspection of the property on behalf of Wells Fargo, which mortgaged the property. The company generated a twenty-four-page report

---

2 Mr. Arndt testified that the Defendants gave him this key about three weeks after the expiration of the tenancy but was not sure whether the key opened every door on the property.

about the property's condition (Inspection Report). The report detailed much of the damage of which the Plaintiff complains and graded the property a 3 out of 5. Grade-3 is defined as "normal condition for property's age and market."

## II.      PROCEDURAL HISTORY

The Plaintiff brought this case alleging that the time the Defendants spent repairing the premises after the lease term ended constituted a holdover period, which entitles them to four months of holdover rent, late fees, and interest under the lease. Additionally, the Plaintiff claims that Defendants' repairs failed to bring the property to its original condition minus ordinary wear and tear as required by the lease agreement. The Plaintiff raises these grievances in the following causes of action: breach of contract, breach of guarantee, and breach of good faith and fair dealing. The Defendants countersue alleging that the facts entitle them to a partial reimbursement for the cost of replacement systems under theories of breach of contract, breach of good faith and fair dealing, and unjust enrichment.

The Plaintiff moved for summary judgment on its claims and against the Defendants' counterclaims and asked the Court to seal exhibits that are documents from the third-party contractor that performed the repairs to the property. The Defendants responded by moving for summary judgment against the Plaintiff's claims, filing an opposition, and moving to strike portions of the Plaintiff's evidence and the assertions made by Mr. Alan Arndt, who is a Federal Rule of Civil Procedure 30(b)(6) witness. To support its motions and counter the motion to strike, the Plaintiff filed a reply with a ninety-five-page supplemental appendix to support its reply. (Suppl. App., ECF No. 69.) In another motion, the Defendants argue that the Court should strike the supplemental appendix as violative of the Court's rules or, in the alternative, allow for a sur-reply to allow for a response to some of the new evidence.

///

## III. SUMMARY JUDGMENT STANDARD

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only facts that affect the outcome are material. *Id.*

To determine when summary judgment is appropriate, courts use a burden-shifting analysis. On the one hand, if the party seeking summary judgment would bear the burden of proof at trial, then he can only satisfy his burden by presenting evidence that proves every element of his claim such that no reasonable juror could find otherwise assuming the evidence went uncontroverted. *Id.* at 252. On the other hand, when the party seeking summary judgment would not bear the burden of proof at trial, he satisfies his burden by demonstrating that the other party failed to establish an essential element of the claim or by presenting evidence that negates such an element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (Brennan J., concurring). Summary judgement should be denied if either the moving party fails to meet his initial burden or, if after that burden is met, the other party establishes a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## IV. DISCUSSION

The Court will preliminarily address the motions to seal, then the Court will address the motions to strike and to file a sur-reply as these affect the universe of available evidence for the Court to consider regarding the motions for summary judgment.

### A. Plaintiff's Motions to Seal

The Plaintiff's motions to seal have gone uncontested, but there is still a presumption in favor of denying motions to seal in dispositive motions that can only be overcome by showing a

compelling reason. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1104 (9th Cir. 2016). Both of the motions seek to seal sensitive business information produced by subpoena of a third-party company. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (holding that private business documents can qualify as a compelling reason to seal court documents). Accordingly, the Court grants both of Plaintiff's motions to seal.

### B.   Defendants' Motion to Strike Supplemental Appendix

The Defendants move this Court to strike the Supplemental Appendix and all the Plaintiff's assertions grounded on the appendix as violative of the Court's Local Rules. The Plaintiff filed the appendix to support its retorts to the Defendants' responses and motion to strike. After analyzing the rules and hearing the parties' arguments, the Court finds that the appendix does not comply with the rules. Thus, the Court grants the Defendants' Motion to Strike Supplemental Appendix.[3]

The Court's binding local rules conclusively show that a party is not allowed to file a supplemental appendix with a reply brief. *See In re Corrinet*, 645 F.3d 1141, 1146 (9th Cir. 2011) ("District judges must adhere to their court's local rules, which have the force of federal law.") In regard to motions, Local Rule of Practice LR 7-2(g) states,

> Supplementation prohibited without leave of court. *A party may not file supplemental* pleadings, briefs, *authorities*, or *evidence* without leave of court granted for good cause. The judge may strike supplemental filings made without leave of court.

(emphasis added). This rule alone is enough to show that evidence may not be attached to a reply brief without leave of Court, which the Plaintiff never obtained and never sought. Local Rule of Practice LR 7-3(a) confirms this requirement:

---

3 The Defendants filed thirty-three pages of supplemental evidence, Third Declaration of Katherine May (ECF No. 90), with its Reply in Support of their Motion for Summary Judgment (ECF No. 89). While the Plaintiff does not object, the Court will not allow the Defendants to submit that evidence with its reply as violative of the local rules and strikes the evidence.

> Motions for summary judgment and responses to motions for summary judgment are limited to 30 pages, *excluding exhibits*. Replies in support of a motion for summary judgment are limited to 20 pages.

(emphasis added). The placement of "excluding exhibits" solely with the motions and responses shows that the rules forbid attaching exhibits with reply briefs.

The Plaintiff defends the filing of the ninety-five pages of evidence with its reply by arguing for a different interpretation of the Local Rules. The Plaintiff cites to Local Rule of Practice LR IA 10-3(i), which mandates that when a party files more than 100 pages of exhibits, then the party is to submit the evidence in a separately bound appendix.[4] The Plaintiff argues that this rule gives a party leave to file evidence with a reply, but it does not—LR 7-2(g) and LR 7-3(a) preclude such an interpretation. In sum, the most natural reading of the Court's Local Rules prohibits the Plaintiff from filing the Supplemental Appendix.

The Plaintiff cites to two unpublished cases from this Court allowing for additional evidence in reply briefs: *Evans v. Encore Event Techs., Inc.*, No. 2:15-cv-1120, 2017 WL 986357 (D. Nev. Mar. 14, 2017) and *Saticoy Bay LLC v. Flagstar Bank, FSB*, No. 2:13-cv-1589, 2016 WL 1064463 (D. Nev. Mar. 17, 2016). However, the Court is unpersuaded by these distinguishable opinions. In *Evans*, the plaintiff moved to strike the defendant's inclusion of *two new paragraphs* in a declaration in its reply to *evidence* presented by the plaintiff in its opposition. *Evans*, No. 2:15-cv-1120, 2017 WL 986357 at *1 n.1. The Court limited its holding to state that it was only allowing the new declaration to rebut the new evidence. *Id.* ("[T]he Court finds that [the paragraphs] . . . rebutted the evidence presented in [the] Response. As such, the Court declines to strike [the paragraphs]."). Here, the Plaintiff is attempting to rebut arguments—not new

---

4 The Plaintiff is correct in stating that the Defendants failed to comply with LR IA 10-3(i), when they did not attach their evidence in a separately bound appendix. Additionally, the Court has the authority to "impose any and all appropriate sanctions on an attorney or party who . . . [f]ails to comply with these rules." LR IA 11-8. Here, the Court finds that no sanction is appropriate.

evidence—asserted by the Defendant. (Pl. Resp. 2:6–8, ECF No. 86 ("[The Plaintiff] was obligated to correct the record and respond to Amazon's new arguments by submitting a Supplemental Appendix.").) More importantly, the parties in *Evans* did not discuss the Local Rules in their briefs, so the issue of interpretation was not before the Court. *Id.*

The Plaintiff's reliance on *Saticoy Bay* is also unconvincing. The Court in that case, allowed for a one-page exhibit to show that a party was the owner of a disputed property. *Saticoy Bay LLC*, No. 2:13-cv-1589, 2016 WL 1064463, at *1. There is no indication from the opinion or its docket that the parties disputed the inclusion of the new evidence. So again, the issue of whether the local rules allowed for reply evidence was not before the Court. *Id.* Also dissimilar from the present case, the party bringing the evidence filed a contemporaneous motion asking the Court to take judicial notice on the fact of ownership as a matter of public record. *Id.* Thus, neither of the cited opinions solve this issue.

Both parties cite to cases outside of this Court and make additional arguments. However, the local rules are dispositive and negate the need to consider any further assertions. The Plaintiff's filing of the appendix without leave from this Court is unprecedented and prohibited. Therefore, the Court grants the Defendants' Motion to Strike the Supplemental Appendix from being considered by the Court for the purposes of the Plaintiff's Motions for Summary Judgement and the Defendants' Motion to Strike.

### C. Defendants' Motion for Leave to File a Sur-Reply

The Defendants filed their Motion for Leave to File a Sur-Reply (ECF No. 75) to counter assertions that were based upon the Supplemental Appendix. The Court allowed for a deposition to take place that was relevant for the Defendants' counterclaim after the close of discovery; however, the Court expressly restrained the Defendants from using the deposition in their response to the pending motion for summary judgment by the Plaintiff. The Defendants did not rely on the

deposition in its response, but the Plaintiff did in its reply by including the deposition in its Supplemental Appendix. The Defendants moved to file a sur-reply to be able to provide their version of the deposition if the Court allowed for the Plaintiff to provide its version. However, the Court strikes the Supplemental Appendix; thus, the motion is denied as moot.

### D.  Defendants' Motion to Strike Portions of Arndt's Declaration and Exhibits

The Defendants argue, in their Motion to Strike Portions of Arndt's Declaration and Exhibits 1-B, 1-C, and 1-D that the Plaintiff relies on inadmissible evidence to support its claims. Cumulatively, the Defendants assert that the evidence contains an unacceptable summary of documents, unexcepted hearsay statements, lay opinions, assertions made without sufficient personal knowledge, and inadmissible legal conclusions, so the evidence must be stricken from the record for the Court's determination regarding the Plaintiff's summary judgement motions. The Court disagrees.[5] Thus, the Court denies the motion.

#### 1.  *Paragraph 31 and Exhibits 1-B and 1-D*

The Defendants attack Paragraph 31 of Arndt's Declaration and Exhibits 1-B and 1-D inasmuch as the Plaintiff offers these items as proof of damages. In the paragraph, Mr. Arndt asserts that the Plaintiff incurred $3,695,573.87 in damages, as of October 22, 2018 citing Exhibit 1-D, where Mr. Arndt listed the alleged expenses that culminated in that total, and Exhibit 1-B is a demand letter sent to the Defendants, which contains the damage figure. The damages are comprised of two categories: (1) holdover rent and the fees associated with the alleged holdover period and (2) the alleged damages to the property beyond ordinary wear and tear. For the damages associated with the alleged holdover, the Defendants argue that the lease dictates the damages, so

---

5 After the Defendants levied this attack on the Plaintiff's evidence, the Plaintiff filed the Supplemental Appendix, in part, to counter these arguments. Since the Court holds that the Supplemental Appendix is improper, the appendix does not affect the Court's determination.

Mr. Arndt's calculation is a legal conclusion. For the damage to the building beyond ordinary wear and tear, the Defendants assert that Mr. Arndt lacks personal knowledge, and his calculation is based solely on inadmissible hearsay and his speculation and lay opinion.

Turning first to whether the Court should strike the testimony concerning the alleged holdover damages, the damage calculation based on holdover rent, late-fees, and interest under the lease are legal conclusions. Under Nevada law, contract interpretation is a question of law to be determined by the judge. *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013). The damages caused by the Defendants' alleged holdover are dictated by the lease in liquidated damages provisions. (Pl. Resp. 7:8–9 ("Arndt's calculation of damages for this amount merely includes the amounts set forth in the Lease."); see Pl.'s App., Ex. 3-B at §§ 4.05, 4.06, ECF No. 37; Ex. 3-I, PA00080-85 at § 4, for relevant lease and lease addendum provisions.) The validity and interpretation of those provisions are to be determined by the Court as a matter of contract interpretation. However, the appropriate challenge to legal conclusions in affidavits is for the opposing party to attack the sufficiency of the conclusions as arguments not for the Court to strike the assertions. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 870 F. Supp. 2d 995, 1000 n.5 (E.D. Cal. 2012), *rev'd in part and remanded on other grounds,* 779 F.3d 1001 (9th Cir. 2015); *Gaub v. Prof'l Hosp. Supply, Inc.*, 845 F. Supp. 2d 1118, 1128 (D. Idaho 2012) ("Objections to evidence on the ground that the evidence is irrelevant, speculative, argumentative, vague and ambiguous, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself. . . . [M]otions to strike on any of these grounds are superfluous, and the court will overrule them."); *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006).

The Defendants further maintain that Mr. Arndt cannot testify as to the alleged damage to the property, because the figure is allegedly made without adequate personal knowledge and supported only by speculation, lay opinion, and unexcepted hearsay. The Plaintiff correctly

counters that Mr. Arndt does not need to have personal knowledge as a 30(b)(6) witness; rather, a 30(b)(6) witness can speak on behalf of the company and can testify from the knowledge of the company. The Court agrees that Mr. Arndt can rely on the knowledge of the company for his affidavit as a 30(b)(6) witness. *Sec. & Exch. Comm'n v. Hemp, Inc.*, No. 2:16-cv-1413, 2018 WL 4566664, at *2 (D. Nev. Sept. 24, 2018) (holding that a 30(b)(6) witness can rely on the knowledge of the company for the purposes of a summary judgment affidavit); *Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc.*, 68 F. Supp. 3d 917, 921 (N.D. Ill. 2014) ("[A] Rule 30(b)(6) witness may testify both in a deposition and at trial to matters as to which she lacks personal knowledge . . . . The Court discerns little principled distinction between allowing a Rule 30(b)(6) witness to testify at trial without personal knowledge and allowing him to testify via affidavit at the summary judgment stage . . . ."). *Contra Souter v. Equifax Information Services LLC*, 299 F.R.D. 126, 132 (E.D. Va. 2014). Thus, whether Mr. Arndt is permitted to attest to the original condition turns on whether the information was "known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

The Defendants did not address the issue of whether the organization had adequate knowledge in their original motion to strike or in their reply brief after the Plaintiff raised this objection in the response. The Defendants only attacked the sufficiency of Mr. Arndt's knowledge, despite the Plaintiff's assertions. Since the Defendants did not address whether the organization for which Mr. Arndt was speaking has the adequate knowledge, the Court declines to make the argument for them.

Turning to the lay opinion and speculation objections, the Defendants argue that these grounds dictate Mr. Arndt cannot testify to the damages that the Plaintiff allegedly incurred; however, valuations of property can appropriately be lay testimony under Federal Rule of Evidence 701. *Ruud v. United States*, 256 F.2d 460, 461 (9th Cir. 1958) ("[T]he trial court required

every witness, before giving an opinion as to the highest and best use or the fair market value of the particular property in issue, to be qualified as an expert real estate appraiser. This was error."); *see* Fed. R. Evid. 701 advisory committee's note to 2000 Amendments ("[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an . . . expert.").

Lastly, the Defendants argue that Mr. Arndt cannot testify to the damage, because the figure is at least partly based on unexcepted hearsay. The Court agrees that Mr. Arndt relies in part on presently unexcepted hearsay; however, Mr. Arndt could testify to the damage figure without relying on the hearsay as discussed above. Thus, the Court declines to strike Mr. Arndt's damage figure in Paragraph 31 of the declaration and in Exhibit 1-B.

Next, the Defendants attack the damages figure calculated from the alleged harm to the property beyond ordinary wear and tear in Exhibit 1-D arguing that the exhibit fails to constitute admissible evidence. The Plaintiff argues that the Court should not strike Exhibit 1-D, since it constitutes a summary under Federal Rule of Evidence 1006. The Plaintiff has not provided these documents for the Court to review but merely provided the documents to the Defendants in discovery.[6] The Court finds that Exhibit 1-D does not presently qualify as a summary under Rule 1006, but finds that the Court may consider its contents as admissible under Federal Rule of Civil Procedure 56. Thus, the Court does not strike the exhibit.

Under Rule 1006, a proponent may submit into evidence a summary of voluminous material that cannot be conveniently examined by the Court. Fed. R. Evid. 1006. In order for a summary to be admissible, the party offering the summary must establish: (1) that the underlying

---

6 The Plaintiff provided bates numbers to the underlying documents in the Supplemental Appendix with an Amended Damage Summary, but the original exhibit does not contain any reference to the underlying documents.

material is voluminous such that it would be impracticable for the Court to review, (2) that the underlying material was made available to the opposing party for review, and (3) that the underlying material would be admissible into evidence. *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011); *In re Citric Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999). "The rationale behind the rule is to offer 'the only practicable means of making their contents available to judge and jury.'" *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984) (quoting Fed. R. Evid. 1006 advisory committee's note to proposed rules).

On review of Exhibit 1-D and the parties' briefs, the Court concludes that Exhibit 1-D does not qualify as an admissible summary under Rule 1006. Assuming without deciding that the contents do constitute voluminous records,[7] which this Court cannot be sure of as the documents have not been presented to this Court, the summary still fails the test.

First, the summary is partly comprised of unexcepted hearsay statements, which precludes the acceptance of the exhibit under Rule 1006. According to Mr. Arndt's deposition, he is familiar with estimates, bids, and quotes from unidentified contractors that give rise to the figure. (Mot. Strike Ex. 1 at 310:4–19, ECF No. 54.) The figures from the unidentified contractors are hearsay as they are out-of-court statements offered for the truth of the matter asserted; the truth being the cost of the repairs. Fed. R. Evid. 801(c). However, the Court cannot be sure that these estimates, bids, and quotes would qualify for any exception such as the business records exception (the only exception that the Plaintiff cites). *See* Fed. R. Evid. 803(6); *Paddack*, 745 F.2d at 1260 (holding that a court should not admit a summary under Rule 1006 if it is partly based on inadmissible

---

[7] In the Supplemental Appendix, the Plaintiff added a multitude of citations to the declaration and summary. However, according to the Defendant, there is only a handful of documentary evidence that supports the Defendants' calculations including two paid receipts, two work proposals, and three unpaid invoices. The rest of the citations are merely pictures, vague emails, and checklists without reference to monetary cost; if true, then it is doubtful that the summary would be of "voluminous records" such that it would be inconvenient for the Court to consider.

evidence). While it is possible that the records could qualify as business records, it is the proponent's burden to show that all of the criteria to qualify are met through sworn testimony by the custodian of the records. Fed. R. Evid. 803(6); *see Washington Cent. R. Co. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353–54 (E.D. Wash. 1993) (holding that records that facially appeared to constitute business records did not meet the exception absent the requisite testimony).

Second, Exhibit 1-D also fails under Rule 1006, because the documents were not made adequately available to the opposing party. The Plaintiff asserts that all of the documents relied on were given to the Defendants in discovery, but the Plaintiff did not identify any of these documents until the Plaintiff submitted the Supplemental Appendix, which this Court strikes. The Plaintiff points to Ninth Circuit caselaw which holds that it is immaterial "if opposing counsel fails to avail himself of the opportunity to review the documents." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 n.9 (9th Cir. 1985). However, the Plaintiff did not afford the Defendants an adequate opportunity. The Ninth Circuit has also said that "Availability of the . . . records alone is not enough." *Paddack*, 745 F.2d at 1261. The opposing party must be given an "opportunity to verify the reliability and accuracy of the summary." *Id.*

Here, the Court finds that such a meaningful opportunity to inspect the records was not provided to the Defendants. From Exhibit 1-D and the accompanying declaration, there is no indication which document supports which figure as there were no citations in the summary. In terms of the damage done to the property, Exhibit 1-D appears to be a standalone spreadsheet purportedly completed by Mr. Arndt without indication that the Plaintiff was attempting to invoke Rule 1006 making the exhibit wholly unverifiable by the Defendants. Therefore, the Court will not consider Exhibit 1-D as an admissible summary of voluminous documents under Rule 1006 at this time; however, the Court can still consider the *contents* of the exhibit under Federal Rule of Civil Procedure 56.

Rule 56 allows the Court to consider evidence whose contents are admissible even if it would otherwise be in an inadmissible form. In *Fraser v. Goodale*, the Ninth Circuit allowed for a court to consider a diary for the purposes of summary judgment that would have been in an inadmissible form. 342 F.3d 1032, 1036 (9th Cir. 2003). The court found that while it would be hearsay, the hearsay declarant would have been able to testify at trial to the same statements. *Id.* at 1037. If the declarant would be unable to recall the specifics of the statements, then the diary could have been used to refresh the declarant's recollection or have been read into evidence. *Id.* Regardless, the contents would have been admissible, so they were considerable under Rule 56.

Likewise, the summary is in an inadmissible form of evidence as the Court finds that the exhibit fails to comply with Rule 1006. Nevertheless, the exhibit could be used in a similar manner to help refresh Mr. Arndt's memory or the Plaintiff could read the contents into evidence. Ultimately, the contents, in that regard, are admissible for the Court's consideration.[8] Thus, the Court declines to strike the exhibit, but notes that the Court treats the exhibit as merely Mr. Arndt's calculation of the alleged damages.

### 2. Paragraph 29

The Defendants contend that the Court should strike Paragraph 29 of the declaration, because it incorporates inadmissible hearsay from Mr. Arndt. The paragraph states, "At no time prior to the sale of the Leased Premises on April 1, 2016 did [the Defendants] complete the outstanding repairs identified in [the Plaintiff's] July 2015 email." (See Pl.'s App. Ex. 7-A for referenced emails.) In the email, Mr. Arndt lists the alleged damages. If the statements are used to show the amount of damages incurred, then the Court agrees that the email is presently

---

8 While the Court will consider the assertion by Mr. Arndt the damages, the testimony will not be given added weight from presently unexcepted hearsay statements in the bids and quotes that he received to calculate the damage total.

inadmissible hearsay. However, when the contents of a hearsay statement could be admitted at trial by the declarant's reassertions, then the contents can still be considered for summary judgment. *Fraser*, 342 F.3d at 1036–37. Here, he could testify to the same content—the amount of damages—at trial, so the Court may consider the email's contents for that purpose. Additionally, the Plaintiff can also rely on the emails to show notice to the Defendants. *See United States v. Rogers,* 321 F.3d 1226, 1229–30 (9th Cir. 2003). Thus, the Court does not strike Paragraph 29.

### 3. Exhibit 1-C

Exhibit 1-C is a chain of emails between Mr. Arndt and the Defendants' agent Mr. Ed Cox. The Defendants argue that the emails should be stricken in as much as they are inadmissible hearsay. The Court finds that the statements made by Mr. Arndt are hearsay, Fed. R. Civ. P. 801(c), while the statements by Mr. Cox are not hearsay as they qualify as admissions by a party opponent, Fed. R. Civ. P. 801(d)(2). The Plaintiff argues that Mr. Arndt's statements are not hearsay, because Mr. Cox, in his capacity as the Defendants' representative, adopted them by his emails. However, examination of the emails does not suggest that Mr. Cox affirmed the truth of the emails. *Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 936 (9th Cir. 2002) (holding that adopting of hearsay requires a manifestation of "a belief in its truth").

The Court's holding that Mr. Arndt's statements in Exhibit 1-C are hearsay is of little consequence. Because, as before, the content of the statements could either be reasserted by Mr. Arndt at trial, so while the form is presently inadmissible the contents are reviewable by this Court.

### 4. Paragraphs 10, 11, 12, 13, 14, 19, and 25

The Defendants again argue that Mr. Arndt is not allowed to testify to the assertions made in Paragraphs 10, 11, 12, 13, 14, 19, and 25, because the assertions are based on legal conclusions and lay opinions and made without sufficient personal knowledge. However, as discussed above, legal conclusions and lay opinions are insufficient grounds for a motion to strike. Furthermore, the

Defendants do not address the appropriate test for adequate knowledge of a 30(b)(6) witness. Thus, the Court declines to strike these paragraphs and the Court denies the Defendants' motion.

### E. Competing Motions for Summary Judgment on Plaintiff's Claims

The parties have filed competing motions for summary judgment on all of the Plaintiff's claims. The Plaintiff raises four causes of action: breach of contract based on unpaid holdover rent, breach of contract based on damage to the property, breach of guarantee, and breach of the duty of good faith and fair dealing. The Court grants summary judgment for the Defendant on the breach of good faith and fair dealing claim, because it is duplicative of the contract claims. The Court further grants summary judgment in part for the Defendants on the breach of contract claim based on property damage, because the Plaintiff cannot show the original lighting levels. The Court denies all other contentions raised in these motions.

#### a. Breach of Contract - Holdover Rent

The Plaintiff claims that it is entitled to holdover rent, because the Defendants allegedly breached the lease agreement by failing to have the property repaired by the end of the lease term and by having contractors working on the property after the lease term. The Defendants counter that repairing a leasehold estate after the lease term expires does not constitute a holdover as a matter of Nevada law. The Court disagrees and finds that genuine disputes of material fact preclude summary judgment on this claim for either party.

The parties agree that the lease is controlling and that the Defendants did not pay any holdover rent. According to the lease, the Defendants must pay holdover rent if the Defendants did not vacate the premises at the end of the lease term for each month that the Defendants were still in possession. The amount of rent was set out in provisions of the lease as well as late fees and interest if the Defendants failed to pay the amount owed. Consequently, the dispositive issue is whether the Defendants timely vacated—a term not defined in the contract.

The Plaintiff argues that the Court does not need to look outside of the lease to determine the definition of vacate for this case. In Section 6.06 of the lease, the Defendants were to surrender the property "in the same condition as received . . . except for ordinary wear and tear." Accordingly, the Plaintiff argues that the lease defines vacate as surrender of the property in the same condition. However, the Plaintiff reads this provision too broadly. Section 6.06 merely dictates that the Defendants are liable for damage to the property beyond ordinary wear and tear; thus, the Court disagrees with the Plaintiff's interpretation. Nevada law consequently dictates the meaning of "vacate." *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 19 n.17 (1977) ("The obligations of a contract long have been regarded as including not only the express terms but also the contemporaneous state law pertaining to interpretation and enforcement . . . . This principle presumes that contracting parties adopt the terms of their bargain in reliance on the law in effect at the time the agreement is reached."); *see Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 830 (8th Cir. 2011) (applying the legal definition of a legal term that went undefined in a contract).

According to Nevada law, whether there is a holdover period is a question of fact. *Consumers Distrib. Co. v. Hermann*, 812 P.2d 1274, 1277 (Nev. 1991). A tenant's mere presence to oversee repairs of a property does not constitute a holdover period. *Id.* at 1278. Even if a tenant relinquishes occupancy of the estate, he may be liable for holdover damages if he leaves the premises "with substantial damage or in an unusable condition." *Id.* at 1277. A landlord does not have to prove damages but must show "some effort to get the old tenant out and a new tenant in before operation of law will impose a holdover tenancy." *Id.* at 1278.

In *Hermann*, the Nevada Supreme Court reversed a district court's finding that a commercial tenant was liable for holdover damages despite remaining on the premises to supervise repairs after a bench trial. The supreme court found that the cost of repairs (approximately $11,000) was less than one fourth of a month's rent and the landlord did not indicate that it would pursue

holdover rent and ordered the repairs twenty-three days before the lease term expired. Thus, the court held, as a matter of law, the tenant was not obligated for the alleged holdover period.

Both parties argue that *Hermann* supports their position. The Plaintiff says that the premises were in an unusable condition, since the City of Fernley did not provide a certificate of occupancy until more than three months after the expiration of the lease term. However, the lease only required that the Defendants "shall obtain and pay for all permits, including a Certificate of Occupancy, required for *[the Defendants'] occupancy*." Lease § 5.02 (emphasis added). The Plaintiff does not provide a case to suggest that failure to acquire a government certificate amounts to a holdover. On the other hand, the Defendants have provided some case law from other jurisdictions that held that a tenant is not responsible for certificates of occupancy after the lease term expires. *See, e.g.*, *H.F.S. Properties v. Foot Locker Specialty, Inc.*, No. cv 15-3273, 2017 WL 455934, at *12 (D. Minn. Feb. 2, 2017) ("The law provides that, when a lease requires a tenant to comply with the law during the term of the lease, that language does not require the tenant to bear the cost of code-compliance work required after the lease terminates."). The Court holds that it is not the Defendants' duty to acquire a certificate of occupancy for the Plaintiff; thus, the Defendants are not liable for any alleged holdover caused by the delay in the certificate's acquisition.

The Defendants argue that *Hermann* entitles them to summary judgment on the claim of holdover rent, because the Defendants continued oversight of repairs to state their claim and the Plaintiff did not show damages. The Court disagrees. The Nevada Supreme Court held that holdover is generally a question of fact; however, the peculiar circumstances of the case dictated its holding. Importantly, the repairs were substantially more in this case then in *Hermann*. The Plaintiff asserts that the Defendant's cost of repairs for the HVAC system alone were estimated to be at $382,565.00 *after* the lease term expired, which is more than a full month's rent ($323,516.71) of the premises. The Defendants dispute costs of repairs after the lease term expired

arguing that the subcontractors often billed late, so the documents that the Plaintiff relies on could be inaccurate. However, the question—whether the repairs were substantial—should be submitted to the trier of fact, especially when there is a dispute regarding the state of the property when the lease term expired.

Additionally, *Hermann* is distinguishable because the Plaintiff told the Defendants about repairs over three months in advance as opposed to three weeks. In *Hermann*, the landlord did not make any showing "that it encouraged [the tenant] to have the premises repaired upon the expiration date or that it completed its obligation to make a list of necessary repairs in a timely fashion." 812 P.2d at 1278. Here, over ninety days before the expiration of the lease term, the Defendants and the Plaintiff conferred about the repairs required under the lease. (Pl. App. Ex. 7 at 176:23–177:5.) Whether ninety days is adequate time is also a question of fact.

Lastly, the Defendants also point to facts that indicate that the Plaintiff had access to the building within a few days of the lease's expiration. According to deposition testimony, the Plaintiff had access to the building in early June, which the Plaintiff disputes; however, even if the Plaintiff did have access, the Plaintiff's ability to use and resell the property are not clear. This is for the trier of fact to decide whether the property was left "with substantial damage or in an unusable condition." Accordingly, the Court finds that this claim is precluded by factual questions.

### b. Breach of Contract - Property Damage

Next, the Plaintiff alleges that the property was returned in a worse condition than required by the lease agreement. The Court, again, finds that the parties have failed to satisfy their respective burdens for summary judgment with the exception of lighting, which the Court grants summary judgment in favor of the Defendants.

///

///

The Plaintiff claims that the Defendants are liable for the following damages:

1. $32,130 for worn carpeting;
2. $20,622 for unpainted walls;
3. $21,600 for broken/missing truck locks;
4. $175,000 for dimmer interior lighting;
5. $56,250 for missing lockers;
6. $12,000 for missing diffusers;
7. $24,548 for damaged HVAC system;
8. $30,000 for damaged fire system; and,
9. $84,389 for other miscellaneous repairs.

(Mot. Summ. J. App. I Ex. 1-D, ECF No. 37.)

Under the Lease, the Defendants were obligated to "keep all portions of the Property . . . in good order, condition and repair (including interior repainting and refinishing, as needed), subject to normal wear and tear. . . . If any part of the Property is damaged by any act or omission of [the Defendants], [the Defendants] shall pay [the Plaintiff] the cost of repairing or replacing such damaged property[.]" (Lease 6.04(a).) The Defendants were required to surrender the property "in the same condition as received . . . except for ordinary wear and tear.[9] (*Id.* at § 10.03(a).) If any part of the Property is damaged by any act or omission of [the Defendants], [the Defendants] shall pay [the Plaintiff] the cost of repairing or replacing such damaged property." (*Id.* at 6.06.) The Plaintiff "shall be entitled to recover from [the Defendants] all damages incurred by [the Plaintiff] by reason of [the Defendants'] default." (*Id.*) Consequently, in order for the Plaintiff to state its cause of action, the Plaintiff must show (1) the condition of each fixture when the Defendants took possession, (2) the condition of the fixture when the Defendants surrendered their possession, and (3) whether the damage is beyond what is permitted under the lease. Additionally, under Nevada law, a damage figure must be produced with reasonable certainty. *Clark Cty. Sch. Dist. v. Richardson Const., Inc.*, 168 P.3d 87, 97 (Nev. 2007).

---

[9] The lease does not define the term "ordinary wear and tear." As the term is a legal term without an otherwise plain and ordinary meaning, the Court applies Nevada law to determine its meaning.

Dealing with these elements in that order, the Court finds that there is enough evidence for the trier of fact to find the condition of the premises was like new when the Defendants took possession. The Plaintiff does not have much evidence about the original condition, because it did not own the premises until more than four years after the Defendants took possession. (Arndt Depo. 18:25–19:4). However, it is not disputed that the Defendants were the first tenants of the property. The trier of fact should be allowed to infer that the building was in a good condition when the Defendants took possession.[10] For example, a juror could reasonably infer that the building was not built with worn out carpet, that diffusers were not missing, and that the building was not installed with broken truck locks. This inference is enough to survive summary judgment on most of the Plaintiff's contentions.

However, an inference that the building was in good condition provides no evidence of the original lighting levels of the building. Defendants replaced the lighting system as part of its repairs in preparation of vacating the premises. The Plaintiff maintains that the lighting levels are substantially lower than the original lighting. The Plaintiff calculated the original light levels from an electrical contractor, Mr. Allan Sisia, who has not been called as a witness to this case. Mr. Sisia produced a lighting report that estimated the original light levels were approximately 50 foot candles. This figure was reiterated in statements made by Mr. Arndt and an email by a representative of the Defendants' contractor, Mr. Michael Clements, stating, "If the requirement is to return to the original . . . lighting [foot candles] levels (approximately 50 [foot candles]) a new design with additional lights and layout will be required." (Pl App. Ex. 13, ECF No. 84).

---

10 The Plaintiff additionally relies on a summary of the property in the lease and statements made by Mr. Arndt; however, neither of these provides much evidence of the original condition of the property. The lease summary provides a generic property description and is evidence that the property was built in 1996; however, it does not establish the condition of the property. Similarly, Mr. Arndt's statements are unpersuasive; he admits, in his deposition, that he did not see the property when it was built or even around when the Plaintiff became the landlord.

The Defendants contend that the calculation and its reiterations must be disregarded as inadmissible hearsay. The Plaintiff argues that the statement made by Mr. Sisia is not hearsay when reiterated by Mr. Clements, because the statement (1) is not offered for the truth of the matter asserted, (2) is a declarant-witness's prior statement, and (3) is an admission by a party opponent. All three arguments fail. The statements made by Mr. Sisia and Mr. Clements must both be evaluated for hearsay. The Plaintiff's use of the statement is for the truth of the matter asserted; the statement asserts that the original lighting was 50 foot candles, and the Plaintiff is offering the statement for the same assertion. Second, the declarant-witness prior statement is not appropriate for either iteration. A declarant-witness's prior statement is admissible (1) if given under oath and is inconsistent with present testimony, (2) if consistent with present testimony and used to rebut a charge of recent fabrication; or (3) if identifies a person as someone the declarant perceived earlier. Fed. R. Evid. 801(d)(1). None of the scenarios applies. Third, Mr. Sisia is not the Defendants' representative, neither is Mr. Clements who is merely a representative of the contractor that performed work on the property. Therefore, the statement is unexcepted hearsay.

As discussed above, the Court can consider evidence in an inadmissible form for summary judgment, so long as the contents would be admissible at trial. However, the calculation's contents cannot be admissible without the electrical contractor to testify—neither Mr. Arndt nor Mr. Clements could survive a hearsay objection if they were to testify about the contents of the report at trial. Both Mr. Arndt and Mr. Clements testified in their depositions that they reported approximately fifty foot candles based on that report. (Def. Mot. Summ. J. Ex. C at 226:23–227:2, ECF No. 56; Ex. E at 128:16–22.) Accordingly, while the Court finds that the Plaintiff is entitled to its original lighting minus seventeen years of ordinary use, the Plaintiff does not have any evidence to show that the original lighting was fifty foot candles. Thus, the Court grants summary judgment in favor of the Defendants for this allegation.

Turning to the next two elements, a reasonable juror could find that many aspects of the property were damaged beyond the allowances in the lease.[11] First, some evidence suggests that the Defendants did not repaint the walls. The Lease stated that it was the Defendants' obligation to repaint as needed. (Lease § 6.04(a).) In its briefs asking for summary judgment, the Plaintiff relies on an unsworn statement by Mr. Arndt, (Pl.'s App. Ex. 7-A,)[12] and, in its reply, relies on the Inspection Report, which states "The walls have been repaired, and sanded. *They are ready for paint* or other finish applications." (Inspection Report at 10 (emphasis added).) A trier of fact will be required to determine whether this evidence satisfies the Plaintiff's burden.

Second, the Plaintiff alleges that the Defendants took lockers that were owned by the Plaintiff. The Plaintiff only relies on the same email from Mr. Arndt as its evidence; this is not sufficient evidence for summary judgment. The Defendants maintain that the lockers were purchased and installed by the Defendants; thus, their property. The Plaintiff's complain that the Defendants quote a page of deposition testimony that was not attached to the motion. Regardless, neither party has satisfied its burden for summary judgment on this issue. A trier of fact will be required to determine who owns the lockers.

Third, the Plaintiff complains that the carpet is in substantial disrepair. The Plaintiff has provided statements from Mr. Arndt and the Inspection Report, which substantiates that the carpet is damaged. (Pl.'s App. Ex. 7-A; Inspection Report at 4.) Under the lease, the Plaintiff was entitled

---

11 The Defendants argue that they are entitled to summary judgment for the entirety of this cause action on the basis that the Plaintiff has not provided an expert or other evidence to show that the damage was beyond ordinary wear and tear, but does not provide a case to show that this is a requirement. The Court does not hold that a plaintiff is always required to provide an expert or other evidence to demonstrably show that any particular damage is not caused by ordinary wear and tear or something else.

12 The Defendants argue again that the email is hearsay, as analyzed above, the Court will consider contents of the email and give it the weight of an unsworn statement.

to have the carpet with seventeen years of use, whether the damage is beyond ordinary wear and tear is for the trier of fact to decide.

Fourth, in its motion for summary judgment, the Plaintiff states that the fire system was damaged beyond ordinary wear and tear. The only evidence that the Plaintiff cites to support this assertion is the same email from Mr. Arndt to the Defendants that stated the damage. (Pl.'s App. Ex. 7-A.) An unsworn statement is not enough to entitle a party to summary judgment. The Plaintiff does point to other evidence in its response to the Defendants' motion, but that evidence cannot be considered for its motion, and the Defendants do not specifically discuss whether the fire system was damaged beyond allowances by the lease in their motion.

The remainder of the damages that the Plaintiff listed in the damage summary are either briefly discussed or not discussed at all in the motions for summary judgment, and the evidence to support these claims are not explained. Accordingly, the Court denies summary judgment on these issues; they will be presented to the trier of fact.

The Defendants also argue that they are entitled to summary judgment on this claim, because even if the Plaintiff satisfies its burden of showing that the property was damaged beyond ordinary were and tear, the Plaintiff has not shown its damage with reasonable certainty. "Although the amount of damages need not be proven with mathematical certainty, testimony on the amount may not be speculative." *Clark Cty. Sch. Dist.*, 168 P.3d at 97. The Plaintiff has not provided any paid receipts for this Court to review as to show the cost incurred. Mr. Arndt maintains that his figures of damages are based on bids and quotes from contractors, which also have not been provided to this Court and not excepted for hearsay. However, Mr. Arndt may provide his testimony regarding the damages to the property. The Court finds that this testimony is "sufficient [evidence] to enable the jury to make an intelligent estimate of . . . damages without resorting to mere speculation." *S. Wine & Spirits of Nevada v. Mountain Valley Spring Co., LLC*, 646 F.3d

526, 536 (8th Cir. 2011) (applying Nevada law) (quoting *United Fire & Cas. Co. v. Historic Pres.*

*Trust*, 265 F.3d 722, 730 (8th Cir. 2001). The Defendants' objection that the testimony is grounded

upon insufficient evidence goes to weight of the calculation not to its admissibility.

In sum, the Court denies summary judgment on all of the claims regarding the damage to

the property beyond ordinary wear and tear except for the lighting claim. The Court grants

summary judgment on that issue, since the Plaintiff cannot show its original condition.

### c.  Breach of Good Faith and Fair Dealing

The Court grants summary judgment on this claim. The Plaintiff alleges that the

Defendants breached their implied covenant of good faith and fair dealing by breaching the

contract. However, the implied covenant only allows for breach of contract remedies when a party

literally complies with a contract but contravenes the spirit of the contract as to deprive a plaintiff

of his reasonable expectations. *Hilton Hotels v. Butch Lewis Productions*, 808 P.2d 919, 923–24

(Nev. 1991). When a plaintiff argues that a defendant violated the covenant of good faith and fair

dealing by breaching the contract, such a claim is duplicative and unnecessary. *Shaw v.

CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1252 (D. Nev. 2016) ("It is well established that a claim

alleging breach of the implied covenants of good faith and fair dealing cannot be based on the

same conduct establishing a separately pled breach of contract claim.").

Here, the Plaintiff only alleges that the Defendants breached the covenant by breaching the

contract. According to the Complaint, the Defendants violated their duty by (1) "failing to pay

Base Rent, Additional Rent, late fees, interest and other charges when due" and (2) failing "to

return the Leased Premises back to their original condition." (Compl. ¶ 112–114.) All of these

allegations are breaches of the lease. Thus, the Court finds that summary judgment is appropriate

on this cause of action.

*///*

##### d. Breach of Guarantee

The Defendants argue that they are entitled to summary judgment on the claim that the Defendants breached the guarantee of the lease, because they did not breach the lease agreement. Since, the Court denies summary judgment on the breach of contract claim, the Defendants' argument fails. Thus, summary judgment is denied on this claim.

### F. Plaintiff's Motion for Summary Judgment on Amazon's Counterclaims

The Plaintiff moves for summary judgment on the Defendants' counterclaims, because the counterclaims are barred by the doctrines of waiver, laches, and equitable estoppel and because the Defendants failed to establish essential elements of the causes of action.

The Plaintiff first argues that the affirmative defenses of waiver, laches, and equitable estoppel bar the Defendants' claims. Turning first to waiver, under Nevada law, a "[w]aiver requires the intentional relinquishment of a known right." *Nevada Yellow Cab Corp. v. Eighth Judicial District Court*, 152 P.2d 737, 740 (Nev. 2007); *see Thompson v. City of North Las Vegas*, 833 P.2d 1132, 1134 (Nev. 1992) (reversing trial court's grant of summary judgment "[b]ecause we believe there exist genuine issues of material fact regarding appellants' knowledge").

The Plaintiff argues that the elapse of approximately three years between when the Defendants were first notified that there were potential replacement systems installed by their contractor and when the litigation commenced constitutes an implied waiver by the Defendants. However, the mere elapsing of time does not dispositively establish a waiver under Nevada law. In *McKellar v. McKellar*, 871 P.2d 296, 297 (Nev. 1994), the Nevada Supreme Court held that fourteen years was not enough in itself to establish an implied waiver. The Court disagrees with the Plaintiff and denies this affirmative defense for summary judgment.

The Plaintiff next argues that laches prevents the Defendants from asserting the counterclaim. "The defense of laches 'requires proof of (1) lack of diligence by the party against

whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Bratton v. Bethlehem Steel Corp.,* 649 F.2d 658, 666 (9th Cir. 1980) (quoting *Costello v. United States,* 365 U.S. 265, 282 (1961)). However, when a statute of limitations has been enacted by the legislature, the courts should rely on the statute and not apply the doctrine of laches absent "[e]specially strong circumstances." *Lanigir v. Arden*, 409 P.2d 891, 896 (Nev. 1966).

In Nevada, a party has six years to bring a breach of contract claim, which the Defendants are well within. Nev. Rev. Stat. § 11.190(1)(b). Accordingly, the affirmative defense could only succeed if it were able to show especially strong circumstances. The Plaintiff argues that the sale of the property presents such exceptional circumstances, because the Plaintiff supposedly would have sold the property for a higher value and would have inspected the allegedly new systems that the Defendants installed. The Court does not believe these circumstances are exceptional especially when all reasonable inferences are drawn in favor of the Defendants for this motion for summary judgment.

Lastly, the Plaintiff raises the defense of equitable estoppel. For this defense to succeed, the Plaintiff must prove

> (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.

*NGA #2 Liab. Co. v. Rains*, 946 P.2d 163, 169 (Nev. 1997) (quoting *Cheqer, Inc. v. Painters & Decorators*, 655 P.2d 996, 998–99 (Nev. 1982)). Again, this defense is barred by factual disputes.

There is some evidence that the Defendants were aware of the replacement systems about three years prior to the notice to the Plaintiff and that the Plaintiff was not aware of these facts. However, there is little evidence to suggest that the other two elements are met, and all reasonable inferences must be drawn in favor of the Defendants.

The Plaintiff maintains that the Defendants' silence demonstrates that the Defendants "had no intent to request a refund." (Pl. Mot. Summ. J. Countercls. 16:7–8.) While the Court holds silence may constitute conduct, it does not demonstrate that the Defendants intended the Plaintiff to rely on the Defendants' silence as a matter of law. *See Cheqer, Inc. v. Painters & Decorators Joint Comm., Inc.*, 655 P.2d 996, 999 (Nev. 1982) ("[T]his court has noted that silence can raise an estoppel quite as effectively as can words."). Additionally, the Court is not convinced that the Plaintiff relied to its detriment on such silence. Despite its assertions, the Plaintiff has not proven that it would have sold the property sooner or for more money had the Defendants raised this claim sooner. Consequently, the Court denies summary judgment on this basis.

Next, the Plaintiff argues that the Defendants lack sufficient evidence to support its claims of breach of contract, breach of good faith and fair dealing, and unjust enrichment. The Court finds that the Defendants have produced enough evidence for the claim of breach of contract, but grants summary judgment on the other two claims.

Turning first to the breach of contract claim, the Defendants allege that they repaired the property beyond the requirements of the contract enriching the Plaintiff and that the lease provides that the Plaintiff is to reimburse the Defendants in part. Specifically, the Defendants purchased new HVAC units. The lease states that if the Defendants replace a system in the property, which has a useful life past the Defendants' tenancy, then the Plaintiff shall reimburse the Defendants for the portion of the value that extended past the tenancy. (Lease § 6.04(a).) According to the lease, the Defendants were also required to notify the Plaintiff of any need to perform an obligation under the lease but is silent as to when the Defendants had a duty to notify the Plaintiff.

The Plaintiff argues that the Defendants failed to comply with the notice requirements of the lease, because they did not notify the Plaintiff until years after the repair work was finished, the Defendants vacated, and the Plaintiff sold the property. However, nowhere in the lease does it

necessitate that the Defendants notify the Plaintiff within a given time. If the Plaintiff was protected by the Defendants' silence, then the protection would stem from the Plaintiff's affirmative defenses, which this Court rejects.

The lease imposes an obligation on the Defendants to maintain the HVAC system by providing for the regular inspection and maintenance of the system and if the system fails due to the Defendants' act or omission, then the Defendants are liable for the repairs or replacements. (Lease § 6.04(a).) The Plaintiff argues that this language entails that the Defendants must show that the system failed absent any of their acts or omissions. The Defendants counter that they only needed to prove (1) that a system was replaced and (2) that system's useful life extended past the Defendants' tenancy. Then, the Plaintiff could avoid liability by proving the system failed because of the Defendants' conduct or neglect.

The Court holds that the Defendants' interpretation of the lease is the most reasonable. Section 6.04(a) of the lease provides for both the Defendants' right to reimbursement for replacement systems and their obligation to maintain the HVAC system. The lease does not directly address which party bears the burden of proof for whether the system failed because of the Defendants' action or failure to act. However, the burden of proof tends to be required by the party that is asserting that fact for a claim or defense. *See Mustang Run Wind Project, LLC v. Osage Cty. Bd. of Adjustment*, 387 P.3d 333, 341 n.15 (Ok. 2016). Since the lease does not negate the general rule, the Court finds that the lease intended to incorporate it. Consequently, the Plaintiff bears the burden to show that the system failed due to the Defendants' neglect if it is to utilize the defense provided for in the lease.

The Court finds that whether the system failed due to the Defendants' neglect is subject to a genuine dispute. Assuming that the Defendants did not have a maintenance contract for the upkeep of the HVAC system, which deponents testify to the contrary, the Plaintiff cannot show

that a lack of maintenance was the cause of the damage. Mr. Arndt testified, "I have no proof," when asked if the HVAC system failed because of the Defendant's alleged lack of maintenance. (Lake Decl. Ex. G at 321:7-10, ECF No. 53.) Thus, this argument fails.

In the reply brief, the Plaintiff relies on deposition testimony from a witness that was deposed after the close of discovery. The deposition was conducted with permission by this Court on the express condition that the deposition was not to be utilized by the Defendants in their response to the Plaintiff's motion. Despite the Defendants' limitation, the Plaintiff proceeded to use the deposition to say that the alleged replacements were actually repairs, which the Defendants dispute in their proposed sur-reply. The Plaintiff provided the deposition as part of the Supplemental Appendix, which this Court strikes as violative of this Court's local rules. Thus, the Court will not consider these arguments and denies summary judgment for this claim.

Turning to the next cause of action, the Defendants' claim of breach of the implied covenant of good faith and fair dealing is denied for the same reason that the Court denies the Plaintiff's similar cause of action. The Defendants' claim stems from the same conduct it alleges for its breach of contract. The Defendants contend that the Plaintiff violated its duty by not reimbursing them for the alleged replacement. As discussed above, the claim for breach of contract and the claim for breach of the covenant of good faith and fair dealing cannot be based on the same conduct; otherwise, the claims are duplicative. Accordingly, the Court grants summary judgment on this cause of action since the Defendants' rights are equally protected its breach of contract theory.

As for the last cause of action, the Defendants concede that they are no longer pursuing a claim based on unjust enrichment. The claim was pled in the alternative in case evidence arose that would undermine the validity of the contract. However, the parties agree the contract is valid and controlling; thus, the Court grants summary judgment for the Plaintiff on this claim.

On a final note, both parties ask for attorney's fees under the lease, which states:

> If any action for breach of or to enforce the provisions of this Lease is commenced, the court in such action shall award to the party in whose favor a judgment is entered, a reasonable sum as attorneys' fees and costs. The losing party in such action shall pay such attorneys' fees and costs.

Lease § 12.01. However, since the Court does not currently enter final judgment in favor of either party, the Court denies these requests at this time.

## V. CONCLUSION

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment (ECF No. 34) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the Plaintiff's Motion for Summary Judgment (ECF No. 35) is DENIED.

IT IS FURTHER ORDERED that the Plaintiff's Motion for Seal (ECF No. 36) is GRANTED.

IT IS FURTHER ORDERED that the Defendants' Motion to Strike (ECF No. 54) is DENIED.

IT IS FURTHER ORDERED that the Defendants' Motion for Summary Judgment (ECF No. 56) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the Defendants' Motion to Strike (ECF No. 74) is GRANTED.

IT IS FURTHER ORDERED that the Defendants' Motion for Leave to File A Sur-Reply (ECF No. 75) is DENIED.

IT IS FURTHER ORDERED that the Plaintiff's Motion for Seal (ECF No. 78) is GRANTED.

///

IT IS FURTHER ORDERED that the Clerk of the Court shall STRIKE Supplemental Appendix (ECF No. 69).

IT IS FURTHER ORDERED that the Clerk of the Court shall STRIKE Declaration of Katherine E. May (ECF No. 90).

IT IS SO ORDERED.

Dated this 23rd day of August 2019.

_____
ROBERT C. JONES
United States District Judge